2000 ND 190

**Rachel M. KAUTZMAN, n/k/a Rachel M. Dietz, Plaintiff and Appellee,**

v.

**Robert A. KAUTZMAN, Defendant and Appellant.**

**No. 20000083.**

Supreme Court of North Dakota.

Oct. 30, 2000.

As Amended on Denial of Rehearing, Dec. 29, 2000.

501

Steven A. Johnson, Vogel, Weir, Hunke & McCormick, Ltd., Fargo, N.D., for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robert A. Kautzman appealed from a memorandum opinion[1] rejecting his claim of exemptions from execution, and from an order confirming a sheriff's sale. We conclude the trial court did not err in rejecting Kautzman's claim of exemptions and in confirming the sheriff's sale. We affirm.

I

[¶ 2] This is Kautzman's fourth appeal stemming from a 1995 divorce action brought against him by Rachel M. Kautzman, now known as Rachel M. Dietz. The original 1997 divorce decree awarded Dietz property valued at $850,160, awarded Kautzman property valued at $851,962, and ordered Kautzman to pay spousal support of $4,000 per month until December 2002, and $2,000 per month thereafter. In

1. Generally, appeals cannot be taken from a memorandum opinion, but an appeal may be taken from a final order affecting a substantial right. *See In Interest of A.S.*, 1998 ND 181, ¶ 1 n. 1, 584 N.W.2d 853; N.D.C.C. § 28–27–02. We treat this memorandum opinion as a final judgment because it was clearly intended to be final. *See Austin v. Towne*, 1997 ND 59, ¶ 7, 560 N.W.2d 895.

*Kautzman v. Kautzman,* 1998 ND 192, ¶¶ 26, 28, 585 N.W.2d 561, this Court affirmed in part, but concluded the trial court had incorrectly valued the parties' construction company, KCI. We reversed and "remanded for a redetermination of the value of KCI and a redetermination of the property distribution in light of the revaluation of KCI, for consideration of an award of attorney fees to Rachel for Robert's actions increasing the time spent on this dispute, and for a determination on Rachel's request for attorney fees on appeal." *Id.* at ¶ 38.

[¶ 3] On remand, the trial court increased the valuation of KCI by $280,859, and ordered Kautzman to pay Dietz an additional $140,429 as a property distribution. The court also awarded Dietz attorney fees of $50,000 because Kautzman substantially increased the cost of litigation, awarded Dietz $10,000 in attorney fees for the initial appeal, found Kautzman in contempt of court, entered money judgments against Kautzman, and denied Kautzman's request to eliminate or reduce his spousal support obligation. Kautzman filed two appeals, raising numerous issues. Among the issues raised in those appeals were his challenge to the valuation of KCI and to the entry of money judgments against him in the amounts of $1,500 for household goods and personal effects, $50,000 for money withdrawn from a bank account awarded to Dietz, $322,139.18 for unpaid property distribution payments and interest, $41,893.88 for past-due spousal support, and $60,000 for attorney fees. In *Kautzman v. Kautzman,* 2000 ND 116, ¶¶ 6–8, 611 N.W.2d 883, we affirmed the court's decisions and rejected his arguments about the trial court's revaluation of KCI. We summarily disposed of the bulk of Kautzman's other arguments by affirming under N.D.R.App.P. 35.1(a)(2) and (4). *Id.* at ¶ 10.

[¶ 4] In November 1999, writs of execution were issued in Cass County, North Dakota, and Otter Tail County, Minnesota, on the $322,139.18 money judgment for past-due property distribution payments. Dietz garnished an annuity, valued at $95,249.13, Kautzman held with Minnesota Mutual Life Insurance Company in North Dakota. The sheriff levied on the annuity and Kautzman's home in West Fargo. Kautzman filed an objection to the levy on the annuity and filed a claim of exemptions, which were rejected by the trial court in January 2000.

[¶ 5] In the meantime, Kautzman and his brother formed a new corporation, Kautzman Millwright, Inc., in December 1998. Kautzman received 10,000 shares of Kautzman Millwright stock in exchange for KCI's assets, and then sold his 10,000 shares to his brother for $35,000. In December 1999, Kautzman Millwright paid the $8,675.97 balance due on the mortgage for the West Fargo home, and received an assignment of the mortgage. Kautzman Millwright also paid two years of property taxes on the home. Kautzman then deeded the West Fargo home, valued by the trial court at $150,000, to Kautzman Millwright "in lieu of foreclosure...."

[¶ 6] The West Fargo home was sold at a sheriff's sale on February 3, 2000, to Dietz, who submitted the highest bid, $130,000. The trial court confirmed the sheriff's sale and set a redemption period of 30 days from the date of service of the order. This appeal followed.

## II

[¶ 7] Kautzman raises numerous issues relating to the levy on the annuity and the sheriff's sale of the West Fargo home.

### A

[¶ 8] Kautzman argues the trial court erred in ruling his annuity was not absolutely exempt from execution under N.D.C.C. §§ 26.1–33–36 and 28–22–03.1(3).

[¶ 9] The trial court entered the $322,139.18 money judgment against Kautzman because he failed to make the property distribution payments required by the divorce decree. We affirmed this

money judgment in *Kautzman*, 2000 ND 116, ¶¶ 4, 10, 611 N.W.2d 883. Section 14–05–25.1, N.D.C.C., provides:

> *Money judgment to secure division of property enforceable by contempt proceedings—Exemptions from process not available.* Failure to comply with the provisions of a divorce decree relating to distribution of the property of the parties constitutes contempt of court. A party may also execute on a money judgment, and the obligor is entitled only to the absolute exemptions · from process set forth in section 28–22–02.

The absolute exemptions under N.D.C.C. § 28–22–02 do not include life insurance policies or annuities.

[¶ 10] Kautzman's reliance on *Vitko v. Vitko*, 524 N.W.2d 102 (N.D.1994), and *Seablom v. Seablom*, 348 N.W.2d 920 (N.D. 1984), in arguing the exemptions under N.D.C.C. §§ 26.1–33–36 and 28–22–03.1(3) remain available to him in this case is misplaced. Not only is *Vitko* not in point, but it works against his position. In *Vitko*, 524 N.W.2d at 103, we rejected the contention exemption statutes govern the distribution of marital property in a divorce. In *Seablom*, 348 N.W.2d at 925, this Court held civil contempt is an improper remedy for the enforcement of a distribution of property. This Court concluded a husband could claim the property he received from the divorce distribution as exempt under N.D.C.C. ch. 28–22 from enforcement of the divorce judgment, but opined:

> Although this case may involve obvious injustice, we recognize that the Legislature, not this court, is the proper body to amend the statutes governing this matter. It is for the Legislature to specify the exemptions which should be applicable in proceedings to enforce the provisions of property division in a divorce judgment.

*Seablom*, at 925–26.

[¶ 11] In 1985, during the next legislative session following our *Seablom* decision, the Legislature enacted N.D.C.C. § 14–05–25.1 "to correct the law because of a deci-

sion by the [S]upreme [C]ourt." *Hearing on H.B. 1486 Before the Senate Judiciary Committee*, 49th N.D. Leg. Sess. (February 19, 1985) (testimony of Senator Wayne Stenehjem). That decision was obviously *Seablom*, and to the extent N.D.C.C. § 14–05–25.1 conflicts with it, *Seablom* has been superseded by the statute. Kautzman's reliance on the exemptions in N.D.C.C. §§ 26.1–33–36 and 28–22–03.1(3) is therefore without merit. *See generally Mees v. Ereth*, 492 N.W.2d 72, 74–76 (N.D.1992).

B

[¶ 12] The divorce judgment specifically granted Dietz liens on the parties' Minnesota lake cabin, the West Fargo home, and Kautzman's stock and interest in KCI, to secure the property distribution payments, and Kautzman contends Dietz was, therefore, limited to foreclosing those liens in enforcing the $322,139.18 money judgment.

[¶ 13] Nothing in the divorce judgment or the trial court's subsequent orders states Dietz must look solely to those three items to enforce the property distribution payments. Moreover, nothing in N.D.C.C. § 14–05–25.1 restricts enforcement of a money judgment to particular property. We conclude Dietz was not limited to the three items of property mentioned in the divorce decree in enforcing the money judgment.

C

[¶ 14] Kautzman argues Dietz's lien in the West Fargo home granted by the trial court to secure the property distribution payments should be viewed as a mortgage lien, thus mandating compliance with the mortgage foreclosure provisions of N.D.C.C. ch. 32–19. The divorce decree specified, "Rachel shall have liens on the following property, until such time as Robert has fully satisfied his obligation [to make monetary payments]: . . . the parties' homestead, [in West Fargo]." The decree also provided, "[s]ubject to the provisions herein, Robert shall be entitled to the West Fargo home; . . ."

[¶ 15] The specific lien granted by the trial court in the divorce judgment was in

the nature of an equitable lien under N.D.C.C. § 14–05–25, and a "trial court may enforce an equitable lien by whatever means it deems appropriate to do justice between the parties." *Martian v. Martian*, 399 N.W.2d 849, 854 (N.D.1987). *See also Moen v. Moen*, 519 N.W.2d 10, 12 (N.D.1994). Kautzman was not statutorily entitled to a one-year redemption period, and, under the circumstances, we conclude the trial court did not abuse its discretion in granting a 30–day redemption period.

## D

[¶ 16] Kautzman claims he was entitled to a homestead exemption under N.D.C.C. ch. 47–18. However, as we point out above, the trial court granted Dietz an equitable lein on the West Fargo home.

[¶ 17] A trial court has broad equitable powers under N.D.C.C. § 14–05–25 to fashion a "remedy applicable to the case," and a court is justified in implying a lien as a result of wrongful conduct by a spouse which results in a breach of an obligation adjudicated in a divorce decree. *See Strankowski v. Strankowski*, 447 N.W.2d 323, 325 (N.D.1989). The equitable lien granted to Dietz on the West Fargo home does not specifically preserve Kautzman's homestead exemption. Rather, the distribution of the homestead to Kautzman was subject to the provisions in the judgment. In view of Kautzman's wrongful conduct and the inequity which would result if Kautzman were allowed to claim the homestead exemption, the trial court did not err in refusing to make the homestead exemption available to him. *See Martian*, 399 N.W.2d at 854. Furthermore, Dietz's equitable lien was not extinguished by Kautzman's transfer of the West Fargo home to Kautzman Millwright. *See generally, Moen*, 519 N.W.2d at 13–14.

[¶ 18] We conclude Kautzman's claim of a homestead exemption was properly rejected by the trial court.

## E

[¶ 19] Kautzman contends the sheriff's sale is void because he was not "mailed notice" of the sale.

[¶ 20] In *Principal Residential Mortg., Inc. v. Nash*, 2000 ND 21, ¶ 17, 606 N.W.2d 120, we held notice of a sheriff's sale in a foreclosure action must be personally served on the debtor. Personal notice of the time and place of sale enables the debtor to attend and ascertain whether the sale is being properly conducted in accordance with statutory requirements, and further enables the debtor to bid on the property if the debtor desires. *Id.* at ¶ 12. In *Nash*, at ¶ 4, the debtor claimed she did not learn of the sheriff's sale until five months after it occurred.

[¶ 21] In this case, Kautzman was personally served with the notice of sale on January 26, 2000, but in his capacity as president of Kautzman Millwright. Kautzman's attorneys filed objections to the sale and appeared at the sale on his behalf. If a party cannot demonstrate prejudice resulting from an allegedly defective notice, there is generally no right to redress. *See, e.g., Wahl v. Morton County Social Services*, 1998 ND 48, ¶ 8, 574 N.W.2d 859; *State v. Hass*, 264 N.W.2d 464, 467–68 (N.D.1978). Kautzman has failed to establish prejudice from not being personally served with the notice of sheriff's sale in his individual capacity.

## III

[¶ 22] We have considered Kautzman's other arguments and conclude they are without merit. The memorandum opinion and order confirming the sheriff's sale are affirmed.

[¶ 23] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., RICHARD W. GROSZ, D.J., concur.

[¶ 24] The Honorable RICHARD W. GROSZ, D.J., sitting in place of KAPSNER, J., disqualified.